UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH LOCHUCH EWALAN,

                Plaintiff,

   v.

WASHINGTON DEPARTMENT OF
CORRECTIONS, et al.,

                Defendants.

Case No. 3:20-cv-05678-JLR-TLF

REPORT AND
RECOMMENDATION

Noted for <u>November 19, 2021</u>

      This matter is before the Court on defendants' motion for summary judgment. Dkt. 53. Plaintiff, proceeding *pro se* and *in forma pauperis*, alleges claims under 42 U.S.C. § 1983 for failing to protect him from assaults by two fellow inmates in violation of his Eighth Amendment rights. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court GRANT defendants' motion.

<u>PROCEDURAL HISTORY</u>

      Plaintiff, who is currently an inmate at the Washington State Penitentiary (WSP) in the custody of the Washington State Department of Corrections, filed this action on July 13, 2020, naming the following defendants: Washington State Department of Corrections ("DOC"), Stafford Creek Corrections Center ("SCCC"), and SCCC employees Robert Schreiber  (CUS G-Unit B-Side), Arlee Rothwell (Sergeant G-Unit B-

1  Side), Russell Dickerson (Sergeant), Tammy Nikula (CC2 Counselor G-Unit),  Kendra

2  Wakefield (H2) and Denny Larson (Sergeant H2). Dkt. 5. Plaintiff's complaint alleges he

3  was assaulted by other inmates while confined at SCCC on July 16, 2017, and October

4  4, 2019, and that defendants violated his rights by failing to protect him despite his

5  reports of threats by the inmates who assaulted him. *Id.* Plaintiff also alleges defendants

6  failed to adequately treat his injuries following his assaults.[1] *Id.* Plaintiff claims

7  defendants' actions violated the Eighth Amendment. As relief, plaintiff seeks monetary

8  damages. *Id.*

9       The Court directed service of the complaint on July 24, 2020. Dkt. 8. After the

10  close of discovery, defendants filed a motion for summary judgment (Dkt. 53), together

11  with the declarations of Denny Larsen (Dkt. 54), Kendra Wakefield (Dkt. 55), Dennis

12  Dahne (Dkt. 56), Darren Chlipala, (Dkt. 57) Arlee Rothwell (Dkt. 59), Tammy Nikula

13  (Dkt. 58) and Robert Schreiber (Dkt. 61), and a Rand notice (Dkt. 58). Plaintiff has filed

14  several documents that, collectively, the Court construes as his response: a motion to

15  stay pursuant to Fed. R. Civ. P. 56(d) (Dkt. 65), a supplement to the motion to stay (Dkt.

16  66), a summary judgment response with attached declarations of plaintiff (Dkt. 68) and

17  a "cross motion" (Dkt. 70). Defendants filed a reply (Dkt. 67) and a response to plaintiff's

18  "cross-motion" (Dkt. 75) together with declarations of Mark Rachel (Dkt. 80) and Salina

19  Brown (Dkt. 81).

---

[1] Plaintiff's complaint also alleges a claim for inadequate medical treatment of plaintiff's injuries. Dkt. 5 at 15. However, as discussed below, plaintiff has stated that he does not intend to pursue that claim. Dkt. 68 at 2–3; Dkt. 70 at 25; Dkt. 36 at 2.

1

## FACTS

2

Plaintiff's claims arise from altercations between plaintiff and two different

3

cellmates. Plaintiff alleges he was attacked by inmate Leland Harris on July 16, 2017

4

("July 2017 incident") and by inmate Juan Figueroa on October 4, 2019 ("October 2019

5

Incident"). Dkt. 5 at 5–8, 14–15.[2]

6

A.    July 16, 2017 Incident

7

The parties agree that plaintiff was found unconscious and bleeding in his cell on

8

July 16, 2017. Dkt. 68 at 36–37; Dkt. 68-1 at 7–15. Plaintiff avers, and defendants have

9

not denied, that he was violently assaulted by his cellmate, inmate Harris. Dkt. 68 at 36;

10

Dkt. 79 at 3.

11

Plaintiff was treated at the Grays Harbor Community Hospital for his injuries,

12

including a facial laceration and fracture. Dkt. 57-1 at 8–11. In November 2017, after

13

plaintiff experienced ongoing symptoms of dizziness, vomiting and headaches, he was

14

diagnosed with a subdural hematoma and underwent surgery at Providence Saint Peter

15

Hospital to relieve the pressure on his brain. Dkt. 57-1 at 108. Plaintiff continues to

16

experience headaches, vomiting, falls, and loss of consciousness. Dkt. 68 at 43.

17

Plaintiff submitted declarations stating that prior to inmate Harris's attack, Plaintiff

18

made a report to defendants Schreiber, Rothwell and Dickerson, of "imminent assault"

19

"seeking protection and safety." Dkt. 68 at 36, 39, 43. Plaintiff states that each of them

20

"dismissed the report as baseless." *Id*. Plaintiff also submitted calendar pages (which he

21

22

---

23

[2] Plaintiff's complaint was not signed under penalty of perjury and is therefore not considered as evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (To be a "verified" complaint considered as evidence, the complaint must be signed under penalty of perjury in compliance with 28 U.S.C. § 1746).

24

25

describes as "diaries") containing handwritten notes. The diaries contain the following entries during the week preceding the July 2017 Incident:

- July 10, 2017: "Report to CUS THREAT"

- July 11, 2017: "Report to SGT Worthwell THREATS"

- July 12, 2017 "Report threats Worthwell"

- July 13, 2017 "REPORTED THREATS SGT DICKSON NICKSON"

- July 15, 2017 "SGT DICKSON SATURDAY REPORTED THREATS BY [illegible]"

The complaint provides slightly different dates: it alleges plaintiff reported threats to defendant Rothwell on July 10 and 11, to "CUS Robert" on July 12 and to defendant Dickerson on July 13 and 15. Plaintiff's declaration affirms that the dates in his diaries, rather than those in his complaint, are the correct dates. Dkt. 68 at 37, 40.

Plaintiff does not allege that he reported any threats to defendant Nikula prior to the assault. Instead, he states only that after the July 2017 incident, defendant Nikula discouraged him from filing a grievance about the attack. Dkt. 68 at 46.

All of the defendants submitted declarations stating that they "do not recall receiving any communication from Ewalan, written or oral, in 2017 related to his relationship with his then-cellmate Leland Harris, or any behavior of his cellmate that would have posed a risk of harm." Dkt. 61 at ¶ 5; Dkt. 59 at ¶ 5; Dkt. 54 at ¶ 4; Dkt. 55 at ¶ 4; Dkt. 60 at ¶ 3. Furthermore, defendant Schreiber states that he did not work from July 13 to July 18, 2017. Dkt. 61 at ¶ 3. Defendant Rothwell states that he does not work on Mondays, so he would not have been at work on July 10, 2017.

Defendants have also submitted copies of plaintiff's grievances, which do not include any discussion of inmate Harris or request any changes to his cell assignment. Dkt. 56.

B.    October 4, 2019 Incident

The parties agree that on October 4, 2019, an altercation occurred in the cell occupied by plaintiff and inmate Juan Figueroa, resulting to an injury to plaintiff's hand. Dkt. 68 at 47–48; Dkt. 57-1 at 72, 134.

Plaintiff's declaration states that he was the "victim of assault" by inmate Figueroa. Dkt. 68 at 42, 47. Plaintiff states that "prior to the assault I reported impending assault to . . . Ms. Kendra Wakefield who responded threats without specifics cannot amount to assault. She dismissed the report as mere words." Dkt. 68 at 47–48.

Plaintiff states that defendant Wakefield referred plaintiff to defendant Larson, the housing sergeant. *Id.* With respect to defendant Larson, plaintiff's declaration states "I reported impending assault to sergeant in charge housing as referred by . . . Ms. Kendra Wakefield seeking protection and safety." Dkt. 68 at 51. No dates are provided for either of these reports.

Plaintiff and another inmate, Anwar Jaylani[3], submitted a cell/bed change request that they be celled together on July 28, 2019, stating that "we are compat[i]ble." Dkt. 54-1 at 2. The form notes that the request was denied on August 11, 2019, stating "bunk not available." *Id.* Plaintiff states that he and inmate Jaylani approached defendant

---

[3] Plaintiff's documents spell inmate Jaylani's name in several different ways. The Court uses the spelling used on the cell/bed change request. Dkt. 54-1 at 2.

Larson after submitting their request and he "threatened if we keep asking he will deny." Dkt. 68 at 51.

All defendants submitted declarations stating that they "do not recall receiving any communication from Ewalan, written or oral, in 2019 related to feeling unsafe, disharmony with Juan Figueroa, or similar concerns that might have suggested a risk to Ewalan's physical safety due to their cohabitation," nor do they recall any such communications from inmate Figueroa. Dkt. 61 at ¶¶ 7, 8; Dkt. 59 at ¶¶ 7, 8; Dkt. 60 at ¶¶ 4, 5; Dkt. 55 at ¶¶ 6, 7; Dkt. 54 at 8, 9. Defendant Larson states that he had received plaintiff's request to be celled with inmate Jaylani and rejected it because the bunk was occupied; defendant Larson does not recall any communication in connection with that request that plaintiff felt unsafe in his current housing with defendant Figueroa. Dkt. 54 at ¶8. On June 4, 2019, defendant Larson had approved a cell/bed change request in which plaintiff and inmate Figueroa had requested to be celled together because of "better compatibility." Dkt. 54-1 at 2.

Defendant Wakefield prepared an Initial Serious Infraction Report ("Infraction Report") memorializing her investigation of the October 2019 Incident. Dkt. 55-1 at 2. The investigation included interviews of responding officers, review of photographs and review of video. Dkt. 55 at ¶ 8. The Infraction Report notes Figueroa had injuries to his face, right bicep, and left hand, while plaintiff had injuries to his right hand. Dkt. 55-1 at 2. Plaintiff's prison medical records state that plaintiff's injury resulted from "punching" his cellmate. Dkt. 57-1 at 134. The Infraction Report concludes that plaintiff was the aggressor and committed the violation of assaulting another offender. Plaintiff was issued a disciplinary hearing notice. Dkt. 47-2 at 91.

1

STANDARD OF REVIEW

2    A.    Summary Judgment

3        The Court shall grant summary judgment if the movant shows there is no

4    genuine dispute as to any material fact, and the movant is entitled to judgment as a

5    matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden to

6    demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v.*

7    *Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is

8    presented when there is sufficient evidence for a reasonable jury to return a verdict for

9    the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A

10    "material" fact is one which is "relevant to an element of a claim or defense and whose

11    existence might affect the outcome of the suit," and the materiality of which is

12    "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific*

13    *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

14        "If the moving party shows the absence of a genuine issue of material fact, the

15    non-moving party must go beyond the pleadings and 'set forth specific facts' that show

16    a genuine issue for trial." *Leisek v. Brightwood Corp*., 278 F.3d 895, 898 (9th Cir. 2002)

17    (*citing Celotex*, 477 U.S. at 323-24). The non-moving party may not rely upon mere

18    allegations or denials in the pleadings but must set forth specific facts showing that

19    there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249

20    (1986). A plaintiff must "produce at least some significant probative evidence tending to

21    support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d

22    959, 963 (9th Cir. 1990). The nonmoving party is required to present specific facts and

23    cannot rely on conclusory allegations. *Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir. 1993).

24    The court must determine whether the specific facts that are presented by the non-

25

1  moving party, considered along with undisputed context and background facts, would

2  show that a rational or reasonable jury might return a verdict in the non-moving party's

3  favor based on that evidence. *Emeldi v. University of Oregon,* 698 F.3d 715, 728-29

4  (9th Cir. 2012).

5      When the Court considers a motion for summary judgment, "[t]he evidence of the

6  non-movant is to be believed, and all justifiable inferences are to be drawn in . . . favor"

7  of the non-moving party. *Anderson*, 477 U.S. at 255. The Court is not allowed to weigh

8  evidence or decide credibility. *Id*. The Court may not disregard evidence solely based

9  on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir.

10  2015).

11  B.    <u>Section 1983</u>

12      To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

13  conduct complained of was committed by a person acting under color of state law, and

14  (b) the conduct deprived a person of a right, privilege, or immunity secured by the

15  Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535

16  (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). The

17  causation requirement of Section 1983 is satisfied only if a plaintiff demonstrates that a

18  defendant did an affirmative act, participated in another's affirmative act, or omitted to

19  perform an act which he was legally required to do that caused the deprivation

20  complained of. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v.*

21  *Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DISCUSSION

A.    Defendants' Motions to Strike

As a preliminary matter, defendants seek to strike several of plaintiff's submissions. First, defendants move to strike plaintiff's submission of pages from his diaries. Dkt. 67 at 3; Dkt. 79 at 8. Defendants also seek to strike the declarations plaintiff submitted with his summary judgment response. Dkt 79 at 9. Finally, defendants request that the Court strike plaintiff's "cross motion summary judgment response" (Dkt. 70) as an unauthorized surreply. Dkt. 79.[4]

1.    Diaries

Defendants contend that plaintiff's diary pages (Dkt. 68-1 at 3) are inadmissible. First, defendants argued that the diaries were not authenticated (Dkt. 67 at 3), but plaintiff has now submitted authenticating declarations. *See*, *e.g.* Dkt. 68 at 37; Dkt. 68-1 at 4. Defendants also argue the diaries should be excluded as hearsay. Dkt. 79 at 8. Plaintiff contends that the diary pages should be considered on summary judgment because they could be admissible at trial to refresh recollection. Dkt. 70 at 8 (citing *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003)).

A court may consider only admissible evidence in ruling on a motion for summary judgment. *Fraser*, 342 F.3d at 1036 (citing *Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir.2002). In *Fraser*, the Ninth Circuit held that the entries in a plaintiff's diary were properly considered at the summary judgment stage over defendant's hearsay

_____

[4] Defendants also seek to strike additional materials submitted by plaintiff with his earlier motions seeking miscellaneous relief, including documents relating to plaintiff's public records requests, kites sent to prison staff and prison announcements. Dkt. 67 at 3 n.6. Plaintiff did not submit those documents for purposes of opposing summary judgment and the Court does not consider them in deciding the summary judgment motion. No purpose would be served by striking these materials, and the Court declines to do so.

objection. 342 F.3d at 1036. The court emphasized that it was not necessary to determine whether the diary itself was admissible; it would be sufficient if the contents would be admissible. *Id*. Because the diary contents could be admitted at trial to refresh plaintiff's recollection pursuant to Fed. R. Evid. 612 or, if necessary, as a recorded recollection pursuant to Fed. R. Evid. 803(5), the court held that they were properly considered in deciding a summary judgment motion. *Id*. at 1037.

Plaintiff's use of his diaries here is indistinguishable from the use of the diaries in *Fraser*. The Court DENIES defendants' motion to strike plaintiff's diaries.

2.    Declarations

Plaintiff's substantive summary judgment response includes several declarations of plaintiff. Dkt. 68 at 36–51; Dkt. 68-1 at 4. Plaintiff submitted this response on April 2, 2021, which was the original noting date of defendants' motion. Defendants seek to strike the declarations as untimely. Dkt. 79 at 9.[5]

Plaintiff is incarcerated and is proceeding *pro se*. Under such circumstances, the Court's rules must not be applied as "'procedural booby traps' which could prevent 'unsophisticated litigants from ever having their day in court.'" *Rand v. Rowland*, 154 F.3d 952, 958–59 (9th Cir. 1998). Plaintiff's summary judgment response, although technically tardy, was filed only four days after the LCR 7(d)(3) deadline. After plaintiff filed his response and "cross-motion," the Court re-noted the motions for May 7, 2021 and defendants had ample time in which to respond. The Court DENIES defendants' request to strike plaintiff's declarations.

---

[5] Defendants also move to strike three medical kites included with plaintiff's response on technical evidentiary grounds. Dkt. 79 at 5. The Court declines to strike these but has not considered them as they do not pertain to the issues presented by defendants' summary judgment motion.

1

   3.  <u>"Cross-Motion"</u>

2

   Finally, defendants move to strike plaintiff's "cross-motion" (Dkt. 70) as an

3

improper surreply. Dkt. 79 at 2. Plaintiff's "cross-motion" appears to seek additional

4

discovery (which is discussed in section H below) and to address evidentiary issues

5

raised by defendants.

6

   Even if the "Cross-motion" is viewed as an unauthorized surreply, the Court

7

declines to strike it. Courts must liberally construe a *pro se* inmate's summary judgment

8

filings, and "avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611

9

F.3d 1144, 1150 (9th Cir. 2010). Defendants have not been prejudiced. They received

10

an opportunity to respond and have submitted both a brief and additional declarations.

11

Dkts. 79, 80, 81. The Court DENIES defendants' request to strike plaintiff's "Cross-

12

motion."

13

B. <u>Defendant Dickerson</u>

14

   Defendants argue that defendant Dickerson should be dismissed because he

15

has not been served with initial process. Dkt. 53 at 7.

16

   The docket in this case shows that defendant Dickerson has not been properly

17

served. The Court directed service on all defendants, including defendant Dickerson, on

18

July 24, 2020. Dkt. 8. Defendant Dickerson did not return a waiver of service. Counsel

19

appeared on behalf of all defendants and filed an Answer. Dkt. 24. However, the

20

Answer expressly alleges as an affirmative defense that the summons and complaint

21

were never properly served upon defendant Dickerson. *Id*. at 4.

22

   A court cannot exercise jurisdiction over a defendant without proper service of

23

process. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987);

24

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th

25

1   Cir.1988) ("A federal court does not have jurisdiction over a defendant unless the

2   defendant has been served properly under Fed. R. Civ. P. 4"). Pursuant to Fed. R. Civ.

3   P. 4(m), "if a defendant is not served within 90 days after the complaint is filed, the

4   court—on motion or on its own after notice to the plaintiff—must dismiss the action

5   without prejudice against that defendant or order that service be made within a specified

6   time." Here, more than 90 days have passed since the complaint was filed and service

7   has not been completed upon defendant Dickerson. Accordingly, the Court

8   recommends that defendant's motion be granted and plaintiff's claims against defendant

9   Dickerson be DISMISSED without prejudice pursuant to Fed. R. Civ. P. 4(m).

10  C.    Defendant Department of Corrections

11         Defendant Department of Corrections argues that it should be dismissed

12  because it is not a "person" under Section 1983. Dkt. 53 at 6.

13         Neither the Department of Corrections nor its subdivision, SCCC, is a proper

14  defendant. Section 1983 applies to the actions of "persons" acting under the color of

15  state law. "Neither states, nor entities that are arms of the state, are 'persons' for

16  purposes of § 1983." *Johnson v. Washington*, 2019 WL 5223048, at *1 (W.D. Wash.

17  Sept. 17, 2019), *report and recommendation adopted*, 2019 WL 5213116 (W.D. Wash.

18  Oct. 16, 2019); *see also Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65, 71

19  (1989). Additionally, there is no evidence the State of Washington has waived its

20  Eleventh Amendment immunity in federal courts. Therefore, DOC and SCCC, as arms

21  of the state, cannot be sued under § 1983.

22         Plaintiff's claims against defendants Department of Corrections and SCCC

23  should be DISMISSED with prejudice.

24

25

D.    Medical Care Claims

Claim III of plaintiff's complaint alleges an Eighth Amendment claim for inadequate medical treatment of his injuries. Dkt. 5 at 15–19. However, in multiple submissions to the Court, plaintiff has stated that he no longer wishes to pursue his medical care claim. *See* Dkt. 35 at 8 ("Plaintiff has not claimed . . . medical indifference we don't have Count III-concerning medical. . . . [Plaintiff] is not claiming serious medical indifference . . ."); Dkt. 68 at 2–4 ("Plaintiff drop[p]ed Count III. . . . Though Count III appears on initial complaint [plaintiff] . . . has no intentions to argue in this complaint he may bring it in future[.]"); Dkt. 70 at 25 ("Plaintiff alleges nothing to do with medical, as of now maybe in the near future[;] anything state defendants argue medical should be disregarded by the court."). Furthermore, consistent with his statements that he is no longer pursuing his medical care claims, plaintiff has submitted no evidence supporting them.

The Court construes plaintiff's statements as a motion to voluntarily dismiss his medical care claims without prejudice. The Court therefore recommends that Claim III of plaintiff's complaint, for inadequate medical care, should be DISMISSED without prejudice.

E.    Failure to Protect

Plaintiff alleges that defendants violated his Eighth Amendment rights by failing to protect him from assaults by inmates Harris and Figueroa. Dkt. 5 at Counts I and II.

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials have a duty to protect prisoners from violence suffered at the hands of other

prisoners. *Id.* at 833. However, not every injury suffered by a prisoner at the hands of another is a violation of a prisoner's constitutional rights. *Id.* at 834.

In cases alleging a constitutional violation based on a failure to prevent harm, the plaintiff must first meet an objective component by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010). A plaintiff must also meet a subjective component by showing the prison official acted with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 832; *see Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

4.   July 2017 Incident

Plaintiff has met the objective portion of the *Farmer* standard with respect to the July 2017 incident, as the parties do not dispute that he suffered serious physical injuries requiring surgery and he continues to suffer ongoing symptoms. Dkt. 68 at 37; Dkt. 67 at 6–7. With respect to the subjective prong, the parties have presented conflicting evidence. Yet, even taking plaintiff's evidence as true and drawing inferences

in his favor, plaintiff has failed to establish that defendants were both aware of facts and drew an inference that plaintiff was at a substantial risk of serious risk of harm.

Plaintiff's declarations state that he had separate conversations with defendants Schreiber, Rothwell and Dickerson[6] during the week of July 10, 2017 in which he told them that he was in danger of an "imminent assault" by his cellmate, inmate Harris. Dkt. 68 at 36, 39, 43. Plaintiff declares that he sought "protection and safety," but each defendant "dismissed the report as baseless." *Id*. Plaintiff states he was attacked by inmate Harris on July 16, 2017, and the parties agree that he was found unconscious and bleeding in his cell after the assault. *Id*.; Dkt. 68-1 at 7–15. Notably, plaintiff's declarations contain no evidence of any pre-attack notice to defendants Nikula, Wakefield or Larson of any danger posed by inmate Harris.

Defendants Schreiber and Rothwell have filed declarations conflicting with plaintiff's evidence, which state that they have no recollection of receiving any communication from plaintiff regarding his relationship with inmate Harris or any behavior by Harris that would have posed a risk of harm. Dkt. 61 at ¶5; Dkt. 59 at ¶ 5. Both also declare that they have no authority over housing assignments. *Id*. Further, defendants Schreiber and Rothwell state that they were not working on the dates plaintiff's complaint reports he had the conversations with them. Dkt. 61 at ¶ 3; Dkt. 59 at ¶4.

Plaintiff acknowledges that his complaint alleged the wrong dates, contending that the correct dates of his conversations are reflected in his diaries (Schreiber and

---

[6] As the Court has determined that the claims against defendant Dickerson should be dismissed without prejudice for failure to perfect service, the Court will not discuss further plaintiff's evidence against him.

Rothwell make no allegation they were not on duty on the dates noted in plaintiff's diaries). Dkt. 68 at 37, 40.[7] Finally, defendants have submitted evidence that plaintiff filed no grievances or written requests discussing any issues with inmate Harris prior to the July 2017 Incident. Dkt. 56-1.

Plaintiff has submitted no evidence that he made any communication to defendants Nikula, Wakefield, or Larson, regarding threats from inmate Harris in advance of the July 2017 incident—and their declarations state that they recall no such communications. Dkt. 54 at ¶ 4; Dkt. 55 at ¶ 4; Dkt. 60 at ¶ 3. Plaintiff has therefore failed to meet his burden to defeat summary judgment as to these defendants with respect to the July 2017 Incident.

As to defendants Schreiber and Rothwell, the parties have presented conflicting evidence regarding whether plaintiff made reports of threatened harm. But even accepting plaintiff's evidence that he reported a threat to defendants Schreiber and Rothwell, plaintiff's declarations fail to establish a sufficient factual foundation to meet the standard required to prove deliberate indifference.

To defeat summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). Plaintiff states only the broad conclusion that he "reported imminent assault." Dkt. 68 at 36, 39, 43. But in order to be deemed to have acted or failed to act with deliberate indifference, a prison officer must have more than a "mere suspicion" that an attack will occur. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

---

[7] Defendants suggest that the diaries are unreliable and self-serving on this issue. Dkt. 79 at 7–8. But the Court draws all inferences in favor of the non-moving party; it may not weigh the evidence or decide credibility. *Anderson*, 477 U.S. at 255. Furthermore, evidence may not be disregarded solely based on its self-serving nature. *Nigro*, 784 F.3d at 497.

"[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm" to a prison official. *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). In particular, one inmate's threat against another will not have this effect where neither inmate has a prior history of violence. *Id*; *see also Perkins v. Grimes,* 161 F.3d 1127, 1130 (8th Cir.1998) (no notice of the risk that an inmate would sexually assault another where they had previously been housed together without incident). Thus, "to the extent Plaintiff contends that he was threatened by other inmates and reported such incidents to prison officials, such allegations are insufficient to state a cognizable Eighth Amendment claim for deliberate indifference." *McElroy v. Gomez*, No. 120CV00658NONESABPC, 2020 WL 6561214, at *12 (E.D. Cal. Nov. 9, 2020), *report and recommendation adopted,* No. 120 CV 00658NONESABPC, 2020 WL 7319422 (E.D. Cal. Dec. 11, 2020) (*citing Prater* and *Perkins*).

Here, plaintiff provides no evidence that defendants were aware of any prior history of violence by between plaintiff and inmate Harris—or any facts from which defendants would have inferred that the threat plaintiff reported created a substantial risk. Plaintiff provides no specific facts beyond his conclusory statement that he informed defendants of a threat. Plaintiff does not identify what inmate Harris said or did that made him believe he was in danger—and more importantly, plaintiff provides no factual detail describing what he told defendants about Harris's conduct and threats, or what defendants said in response. In short, plaintiff provides only a vague conclusion, devoid of facts or details. A plaintiff may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National*

1    *Wildlife Federation*, 497 U.S. 871, 888 (1990). To meet the Eighth Amendment

2    standard, plaintiff must supply more than "conclusory allegations that [defendants] were

3    aware" of a risk; he "must provide meaningful evidence, more than a mere scintilla, that

4    would tend to prove his assertions in order to overcome summary judgment." *Horonzy*

5    *v. Corr. Corp. of Am.*, 2014 WL 3810430, *11 (D. Idaho Aug. 1, 2014).

6         Plaintiff has failed to present facts sufficient to establish that defendants were

7    both aware of facts and drew an inference that plaintiff was at serious risk of harm from

8    inmate Harris. The Court therefore recommends that defendants' motion for summary

9    judgment dismissing plaintiff's claims arising out of the July 2017 Incident should be

10   GRANTED.

11        5.    October 2019 Incident

12        Plaintiff submitted declarations stating that he was a victim of assault on October

13   4, 2019, and at some unspecified time prior to that incident, he "reported impending

14   assault" by inmate Figueroa to defendants Wakefield and Larson. Dkt. 68 at 47, 50–51.

15   Plaintiff has submitted no evidence that he informed defendants Nikula, Schreiber and

16   Rothwell of any threat from inmate Figueroa, and they have submitted evidence that

17   they received no such information. Dkts. 59, 60, 61.

18        Plaintiff makes a conclusory statement that he was a victim of assault in the

19   October 2019 Incident. Dkt. 68 at 42, 47. It is not disputed that plaintiff's hand was

20   injured. Dkt. 57-1 at 134. While the evidence of a substantial risk of serious harm is

21   weaker here, the Court will draw reasonable inferences in favor of the non-moving

22   party, and for summary judgment analysis, it is sufficient.

23        But even if plaintiff can establish the objective prong of the *Farmer* test, his

24   conclusory statement that he "reported impending assault" to defendants Wakefield and

25

Larson is insufficient to meet his burden to prove those defendants were aware of facts and drew an inference that plaintiff was at a substantial risk of serious risk of harm. Instead, defendants have submitted evidence from which they could have inferred a lack of such risk.

First, plaintiff had requested to be housed with inmate Figueroa and claimed they were "compatible." Dkt. 54-1 at 2. Furthermore, when plaintiff sought to change his cellmate, he made no mention of any threat of harm, again simply stating that he was compat[i]ble" with inmate Jaylani. *Id*. Plaintiff made no communication in connection with his cell change request that he felt unsafe in his current housing with defendant Figueroa. Dkt. 54 at ¶8.

Finally, plaintiff's statement is wholly conclusory and lacks any details of the content or the context of the threat. Accepting as true plaintiff's evidence that he reported a threat, the report alone is insufficient to impute actual knowledge of a substantial risk of harm—where there was no history or indicia of violence between plaintiff and defendant Figueroa. *Prater*, 89 F.3d at 541.

 Plaintiff has failed to present facts sufficient to establish that defendants were both aware of facts and drew an inference that plaintiff was at serious risk of harm from inmate Figueroa. The Court therefore recommends that defendants' motion for summary judgment dismissing plaintiff's claims arising out of the October 2019 Incident be GRANTED.

G.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity. Because the Court recommends dismissal of plaintiff's claims on other grounds, the Court does not reach this argument.

H.    Plaintiff's "Cross-Motion" and Request for Fed. R. Civ. P. 56(d) Continuance

Plaintiff has filed a motion and supplement for a continuance to seek additional discovery pursuant to Fed. R. Civ. P. 56(d), and a "Cross-Motion" that seeks much of the same information. Dkts. 65, 66, 70. Because none of the information plaintiff identifies is material to determining whether defendants knew of and disregarded a substantial risk of serious harm, the Court denies a continuance.

Rule 56(d) of the Federal Rules of Civil Procedure provides:

When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

The party seeking a continuance must make (a) a timely application which (b) specifically identifies (c)  relevant information, (d) where there is some basis for believing that the information sought actually exists. *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.,* 353 F.3d 1125, 1129–1130 (9th Cir. 2004). The burden is on the party seeking additional discovery to proffer sufficient facts to show the evidence sought exists. *Chance v. Pac–Tel Teletrac, Inc.,* 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The Court may deny the request unless the party opposing summary judgment articulates how additional discovery may preclude summary judgment and demonstrates diligence in pursuing discovery thus far. *Qualls v. Blue Cross of California, Inc.,* 22 F.3d 839, 844 (9th Cir. 1994).

Plaintiff seeks the following additional information:

(1) incident reports regarding the July 2017 and October 2019 Incidents;

(2) video surveillance footage of the July 2017 and October 2019 Incidents;

(3) Documentation showing who was celled with inmate Jaylani

Dkt. 65 at 1–2; Dkt. 66 at 1–2; Dkt. 70 at 2–4.[8]

Defendants contend that plaintiff did not seek these materials while discovery was ongoing. Dkt. 67 at 3–4. Defendants have also submitted evidence that none of the requested video footage exists. No surveillance video would have captured the July 2017 Incident, because it occurred inside plaintiff's cell. Dkt. 80 at ¶5. Video depicting the conclusion of the October 2019 incident once existed in the custody of the Hearings Office, but it was subject to a six month retention period and is no longer in existence. *Id*. at ¶ 6; Dkt. 81 at ¶¶4, 5.[9]

Furthermore, plaintiff has not established that either the video (if it existed) or the documents he identifies would preclude summary judgment. None of this evidence is relevant to the question of whether defendants were aware of a substantial risk of serious harm—which is the only disputed issue here. Instead, the requested materials pertain to matters that are not disputed. The parties agree on the existence of the two altercations and the injuries sustained by the plaintiff. Neither is there any dispute that plaintiff asked to be celled with inmate Jaylani and was denied. Whether the reason given for the denial was accurate is immaterial. In short, plaintiff has not established that the information he seeks would preclude summary judgment.

---

[8] Plaintiff also refers to discovery he sought in his motion to compel. However, the Court denied that motion due to plaintiff's failure to comply with the meet and confer requirement of LCR 37(a)(1).

[9] The doctrine of spoliation suggested by plaintiff (Dkt. 70 at 5–6) is inapplicable here. The six-month retention period would have expired long before plaintiff filed this action in July 2020.

Plaintiff's motion for a continuance (Dkt. 65) and "Cross-motion" (Dkt. 70) are DENIED.

I.    In Forma Pauperis Status on Appeal

The Court must also decide whether plaintiff's *in forma pauperis* status should continue in the event of an appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i) & (ii).

While the Court was not persuaded on the merits of plaintiff's claim, there is no evidence that an appeal would be frivolous or is taken in bad faith. Accordingly, the Court recommends that *in forma pauperis* status should continue in the event of an appeal.

<u>CONCLUSION</u>

The Court concludes that the evidence, viewed in the light most favorable to plaintiff, shows no genuine issues of material fact exist regarding plaintiff's failure to protect claims. The Court therefore recommends the Court GRANT defendants' motion for summary judgment (Dkt. 53) and dismiss plaintiff's complaint. Specifically, the Court recommends that plaintiff's claims against defendant Dickerson and his claim in Count III for allegedly deficient medical care be dismissed without prejudice, and that all other claims be dismissed with prejudice. Plaintiff's motion to stay (Dkt. 65) and "Cross-motion" (Dkt. 70) should be DENIED.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6; Fed. R. Civ. P. 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **November 19, 2021**, as noted in the caption.

Dated this 29th day of October, 2021.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge