UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH LOCHUCH EWALAN,

                    Plaintiff,

         v.

WASHINGTON STATE
DEPARTMENT OF
CORRECTIONS, et al.,

                    Defendants.

CASE NO. C20-5678JLR

ORDER ON REPORT AND
RECOMMENDATION

## I.      INTRODUCTION

This matter comes before the court on Defendants Washington State Department

of Corrections ("DOC"), Stafford Creek Corrections Center ("SCCC"), and SCCC

employees Robert Schreiber, Arlee Rothwell, Russell Dickerson, Tammy Nikula, Kendra

Wakefield, and Denny Larsen's (collectively, "Defendants") motion for summary

judgment (MSJ (Dkt. # 53); Reply (Dkt. # 67)); various filings, which the court construes

as Plaintiff Joseph Lochuch Ewalan's summary judgment response (Stay Mot. (Dkt.

# 65); Suppl. Stay Mot. (Dkt. # 66); MSJ Resp. (Dkt. # 68); Cross-MSJ (Dkt. # 70));

Defendants' response to Mr. Ewalan's "cross-motion" (Cross-MSJ Resp. (Dkt. # 75)); the

report and recommendation of United States Magistrate Judge Theresa L. Fricke (R&R

(Dkt. # 82)); and Mr. Ewalan's objections thereto (Obj. (Dkt. # 83).)  Having carefully

reviewed those documents, the relevant portions of the record, and the applicable law, the

court ADOPTS in part and DECLINES TO ADOPT in part the report and

recommendation and GRANTS in part and DENIES in part Defendants' motion for

summary judgment.[1]

## II.    BACKGROUND

This is a civil rights action brought under 42 U.S.C. § 1983 by Mr. Ewalan, an

inmate at the Washington State Penitentiary.  (R&R at 1.)  Mr. Ewalan alleges that, while

an inmate at SCCC, he was twice assaulted—on July 16, 2017 and October 4, 2019—by

other inmates.  (Id. at 2.)  He has sued Defendants for money damages for violating his

Eighth Amendment rights by failing to protect him from these assaults and by failing to

adequately treat his resulting injuries.  (Id.)  The remaining factual background and

procedural history are comprehensively described in the report and recommendation

(R&R at 1-6), which the court ADOPTS and incorporates by reference herein.

Accordingly, the court discusses below only those facts that are of particular relevance to

its analysis in this order.

//

---

[1] Mr. Ewalan's "cross-motion" (Dkt. # 70) does not seek summary judgment in his favor, but rather "appears to seek additional discovery . . . and to address evidentiary issues raised by defendants."  (R&R at 11.)

The report and recommendation recommends that the court:  (1) deny Defendants' motions to strike some of Mr. Ewalan's exhibits, declaration testimony, and "cross-motion" (*id.* at 9-11); (2) dismiss Sgt. Dickerson without prejudice (*id.* at 11-12); (3) dismiss the DOC and the SCCC with prejudice (*id.* at 12); (4) dismiss count III of Mr. Ewalan's complaint, which alleges that he received inadequate treatment of his injuries, without prejudice (*see* Compl. (Dkt. # 5) at 15;[2] R&R at 13); (5) grant summary judgment to Defendants on count I of Mr. Ewalan's complaint, which alleges that Defendants failed to protect him from an assault by inmate Leland Harris on July 16, 2017 (the "July 2017 Incident") (*see* Compl. at 5; R&R at 14-18); (6) grant summary judgment to Defendants on count II of Mr. Ewalan's complaint, which alleges that Defendants failed to protect him from an assault by inmate Juan Figueroa on October 4, 2019 (the "October 2019 Incident") (*see* Compl. at 14; R&R at 18-19); (7) deny Mr. Ewalan's motion for a continuance (Dkt. # 65) and "cross-motion" (Dkt. # 70) (R&R at 20-22); and (8) continue Mr. Ewalan's *in forma pauperis* status in the event of an appeal (*id.* at 22).

Mr. Ewalan objects to:  (1) dismissing Sgt. Dickerson without prejudice (Obj. at 2); (2) dismissing DOC and SCCC with prejudice (*id.* at 4); (3) granting summary judgment on count I (*id.* at 19); (4) granting summary judgment on count II (*id.* at 21); and (5) declining to reach the issue of qualified immunity (*id.* at 22-23).[3]

---

[2] The court uses the CM/ECF page numbers when citing to Mr. Ewalan's complaint.

[3] Mr. Ewalan does not actually object to the court dismissing count III of his complaint, but seemingly writes to provide further evidence of his intent to voluntarily dismiss that claim. (*See* Obj. at 25; *id.* at 139 (affirming that he has "no interest in pursuing medical negligence at

# III.   ANALYSIS

The court ADOPTS in full the recommendations to which Mr. Ewalan has not objected and, after setting forth the applicable standards of review, considers below each recommendation to which he has objected.

## A.   Standard of Review

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters.  Fed. R. Civ. P. 72(b).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to," *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), but need not review de novo any portion of the report and recommendation to which no objection has been made, *Wang*, 416 F.3d at 1000 n.13.  Because Mr. Ewalan is proceeding *pro se*, the court must interpret his objections liberally.  *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

As this matter comes to the court on Defendants' summary judgment motion, the court will apply the traditional summary judgment standard in reviewing the report and recommendation.  Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any

//

---

this point in time").)  Accordingly, the court ADOPTS the recommendation to dismiss count III without prejudice without conducting de novo review.  *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005).

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*,

816 F.3d 1170, 1177 (9th Cir. 2016).  A fact is "material" if it might affect the outcome

of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute

is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the

non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)

(citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute

of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at

323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

show the absence of such a dispute in two ways:  (1) by producing evidence negating an

essential element of the nonmoving party's case, or (2) by showing that the nonmoving

party lacks evidence of an essential element of its claim or defense.  *Nissan Fire &*

*Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

meets its burden of production, the burden then shifts to the nonmoving party to identify

specific facts from which a factfinder could reasonably find in the nonmoving party's

favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

**B.     Recommendations for Dismissal of Parties**

<u>1.</u>     <u>Sgt. Russell Dickerson</u>

The report and recommendation recommends dismissing Sgt. Dickerson based on

Mr. Ewalan's failure to properly serve him with a copy of the summons and complaint.

(R&R at 11.)  Mr. Ewalan objects that Sgt. Dickerson, notwithstanding his assertion of

insufficient service, has been an active participant in this case through counsel for

Defendants, who have appeared on his behalf, and so clearly had sufficient notice of the

lawsuit.  (*See* Obj. at 2; *see also* Rachel NOA (Dkt. # 10); Ahearn NOA (Dkt. # 11).)

Moreover, because the court directed the Clerk to send requests for waiver of service to

Defendants by email (7/24/20 Order (Dkt. # 8) at 1-2), Mr. Ewalan contends that he

should not be held responsible for any failure to perfect service on Sgt. Dickerson,

especially where ineffective service appears to be a result of Sgt. Dickerson's retirement

from DOC.  (Obj. at 2-4.)

On July 24, 2020, Magistrate Judge Fricke directed the Clerk to send Defendants

"by e-mail:  copies of plaintiff's complaint, this Order, the Notice of Option to Consent,

the notice of lawsuit and request for waiver of service of summons, and a waiver of

service of summons."  (7/24/20 Order at 1-2.)  The July 24, 2020 order also notified

Defendants that failure "to timely return the signed waiver" would result in personal

service and that they may be responsible for covering the cost of that effort, in

accordance with Federal Rule of Civil Procedure 4(d)(2).  (*Id.* at 2.)  The order further

directed the Clerk to send the order and the court's "pro se instruction sheet" to Mr.

Ewalan.  (*Id.* at 5.)  With respect to service, the pro se instruction sheet states that "[a]fter

a defendant/respondent has been served with your complaint/petition, all documents and

motions you file with the [c]ourt will be electronically served on defendant/respondent's

attorney (or on defendant/respondent if the defendant/respondent is pro se)."  (Pro Se

Instruction Sheet (Dkt. # 8-1) at 1.)  Unlike all other Defendants, Sgt. Dickerson did not

return a waiver of service form, apparently because he "has retired from the Washington

1  State Department of Corrections and was unable to be located for a waiver of service at

2  his last known contact information." (MSJ at 1 n.1.) However, counsel for Defendants

3  nevertheless "entered an appearance on his behalf as a precaution." (*Id.*; Rachel NOA;

4  Ahearn NOA.) In that capacity, they answered the complaint and raised the affirmative

5  defense of deficient service (Answer (Dkt. # 24) at 4), pursuant to which they

6  subsequently moved for his dismissal (MSJ at 7).

7       Defendants have a duty to avoid unnecessary expenses of serving the summons,

8  and so plaintiffs may request that a defendant waive service of a summons. *See* Fed. R.

9  Civ. P. 4(d)(1). However, defendants are "not legally required to respond to a request for

10  waiver of service," *Markel Ins. Co. v. Dahn Yoga & Health Centers, Inc.*, No.

11  C09-1221RSM, 2010 WL 1980307, at *5 (W.D. Wash. May 17, 2010), and, "if a

12  defendant fails to respond to a request for wavier, the plaintiff nonetheless must effect

13  service of process on that defendant in a timely manner under Rule 4(m)," *Al-Hizbullahi*

14  *v. Bleisner*, No. C 04-4903 MMC (PR), 2009 WL 1855234, at *2 (N.D. Cal. June 29,

15  2009) (citing William W. Schwarzer, et al., *Federal Civil Procedure Before Trial* § 5:90

16  (2009)).

17       Where a plaintiff has failed to comply with Rule 4(m), a court may extend the time

18  period for service of a complaint if good cause is shown. *In re Sheehan*, 253 F.3d 507,

19  512 (9th Cir. 2001). "At a minimum, 'good cause' means excusable neglect." *Id.*

20  (quoting *Boudette v. Barnette,* 923 F.2d 754, 756 (9th Cir. 1991)). This is shown where

21  "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would

22  suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were

dismissed." *Id.* (quoting *Boudette*, 923 F.2d at 756).  Given defense counsel's representations in this case (*see* MSJ at 1 n.1), it is not clear whether Sgt. Dickerson has actual knowledge of this litigation, although the fact that his interests—which appear to align with those of his co-Defendants—have been represented since the outset suggests that he has not been prejudiced by the deficient service (*see id.* at 7).

On the other hand, Mr. Ewalan would clearly be prejudiced by the dismissal of Sgt. Dickerson.  "It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims."  *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007).  In Washington, "[t]he statute of limitations on personal injury suits is three years from the time the plaintiff knows all the essential elements of the cause of action."  *Deggs v. Asbestos Corp. Ltd.*, 381 P.3d 32, 34 (Wash. 2016).  Count I of Mr. Ewalan's lawsuit stems from events that took place in July 2017 (Compl. at 5-13) and so dismissal, even without prejudice, may result in that claim being time barred should he be forced to re-file it.  *See In re Sheehan*, 253 F.3d at 512.

Even where good cause is not shown, however, "[c]ourts have discretion under Rule 4(m) . . . to extend the time for service or to dismiss the action without prejudice."  *Id.* at 513 (declining "to articulate a specific test" but emphasizing that "under the terms of [Rule 4(m)], the court's discretion is broad").  Here, the court finds that the following factors justify an exercise of discretion in Mr. Ewalan's favor:  (1) his *pro se* status; (2) his apparent confusion about whether the Clerk's office, having distributed waiver of service materials to Defendants in the first instance, would retain responsibility for

personally serving any Defendant that failed to return a waiver; (3) the appearance of

counsel on Sgt. Dickerson's behalf from the outset of the case; and (4) the unusual

difficulties created by Sgt. Dickerson's apparent retirement from DOC and relocation.

For the foregoing reasons, the court DECLINES TO ADOPT the recommendation

for dismissal of Sgt. Dickerson and instead EXTENDS Mr. Ewalan's time to serve Sgt.

Dickerson with a copy of the summons and complaint by forty-five (45) days, starting

from the date of this order.  Failure to perfect service of Sgt. Dickerson in that time will

result in his dismissal from this action.

2.      Washington Department of Corrections and Stafford Creek Corrections
        Center

The report and recommendation further recommends dismissing Defendants DOC

and SCCC with prejudice because neither is a "person" under 42 U.S.C. § 1983.  (R&R at

12.)  Mr. Ewalan "objects" to clarify that he has not sued these Defendants, but has rather

sued only individual employees of the DOC.  (*See* Obj. at 4.)  Mr. Ewalan points out that

he names neither entity in the "Defendant Information" portion of this complaint,

although the court notes that both are named in the case caption of his complaint.  (*See*

Compl. at 1.)  Moreover, each entity participated as a defendant in this litigation.  (*See*

*generally* Dkt.).  Regardless, the court ADOPTS the recommendation to dismiss

Defendants DOC and SCCC with prejudice either because (1) Mr. Ewalan did not intend

to sue them (*see* Obj. at 4) or, alternatively, (2) as arms of the State of Washington, both

are immune from lawsuits brought in federal court under 42 U.S.C. § 1983.  (*See* R&R at

12); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-66 (1989); *Garnica v.*

1   *Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1268 (W.D. Wash. 2013) ("A state

2   agency is not a 'person' under 42 U.S.C. § 1983."), *aff'd*, 639 F. App'x 484 (9th Cir.

3   2016).

4   **C.      Recommendations on Mr. Ewalan's Failure to Protect Claims**

5          The report and recommendation recommends granting summary judgment in

6   Defendants' favor on counts I and II of Mr. Ewalan's complaint, which allege that

7   Defendants violated his Eighth Amendment rights on two separate occasions by failing to

8   protect him from assaults perpetrated by Mr. Harris in July 2017 (count I) and Mr.

9   Figueroa in October 2019 (count II).  (R&R at 13-19.)  These recommendations flow

10  from the report and recommendation's conclusion that Mr. Ewalan failed to meet the

11  "subjective component" of the failure to protect test set forth in *Farmer v. Brennan*, 511

12  U.S. 825, 826 (1994) for counts I and II.  (*See id.* at 18-19.)

13         "The Eighth Amendment imposes a duty on prison officials to protect inmates

14  from violence at the hands of other inmates."  *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th

15  Cir. 2015) (citing *Farmer*, 511 U.S. at 833).  "[A] prison official violates an inmate's

16  Eighth Amendment right only if that official is 'deliberately indifferent'—in other words,

17  if the official is subjectively aware of a substantial risk of serious harm to an inmate and

18  disregards that risk by failing to respond reasonably."  *Wilk v. Neven*, 956 F.3d 1143,

19  1148 (9th Cir. 2020) (citing *Farmer*, 511 U.S. at 837, 844-45).  This subjective awareness

20  inquiry is "fact-intensive and typically should not be resolved at the summary judgment

21  stage."  *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir.

22  2013).

1       **1.**    <u>The July 2017 Incident</u>

2       As an initial matter, the court ADOPTS the report and recommendation's

3 recommendation that summary judgment be GRANTED in favor of Ms. Tammy Nikula

4 with respect to the July 2017 incident.[4]  The court has independently considered the

5 matter and agrees with Magistrate Judge Fricke's reasoning that Mr. Ewalan presents "no

6 evidence of any pre-attack notice" to Ms. Nikula, and so failed to establish a factual

7 dispute as to her subjective awareness of any threat he faced from Mr. Harris. (*See* R&R

8 at 15, 16; *see also* Obj. at 27 (asserting that Mr. Ewalan "narrated threats . . . to all

9 deffendants [sic] in count one, before 7/16/2017 . . . except to counselor Nikula").)

10       However, Mr. Ewalan has presented evidence that he provided pre-attack notice to

11 Mr. Schreiber and Sgt. Rothwell.[5]  Specifically, Mr. Ewalan testifies that, during the

12 week of July 10, 2017, he had separate conversations with Mr. Schreiber and Sgt.

13 Rothwell, in which he told them that he was in danger of an "imminent assault" by Mr.

14 //

15

16     [4] The report and recommendation considers whether Ms. Wakefield and Sgt. Larsen were aware that Mr. Ewalan had received threats from Mr. Harris in advance of the July 2017 Incident. (R&R at 16.) It, likewise, considers whether Ms. Nikula, Mr. Robert Schreiber, or Sgt.

17 Arlee Rothwell were aware that Mr. Ewalan had been threatened by Mr. Figueroa prior to the October 2019 Incident. (*Id.* at 18.) Mr. Ewalan notes that Ms. Wakefield and Sgt. Larsen were

18 sued only in connection with the October 2019 Incident and that Ms. Nikula, Mr. Schreiber, and Sgt. Rothwell were sued only in connection with the July 2017 Incident (*see* Obj. at 8, 13; *see also* Compl. at 5-15), although he does not object to the report and recommendation on the basis

19 of this "slight mix[]-up" (Obj. at 8, 13). Accordingly, the court considers only Ms. Nikula, Mr. Schreiber, and Sgt. Rothwell's subjective awareness in connection with the July 2017 Incident

20 and only Ms. Wakefield and Sgt. Larsen's subjective awareness in connection with the October 2019 Incident.

21     [5] Because Sgt. Dickerson has not yet been properly served, the court does not discuss whether Mr. Ewalan has raised a triable issue of fact as to Sgt. Dickerson's subjective awareness

22 of the July 2017 Incident.

ORDER - 11

1  Harris.  (*See* MSJ Resp. at 36, 39.[6])  Mr. Ewalan corroborates this testimony with his

2  personal calendar entries from July 2017, which document that Mr. Ewalan reported the

3  "threats" to Mr. Schreiber on July 10, 2017 and Sgt. Rothwell on July 12 and 13, 2017.

4  (*See* Ex. 1 to MSJ Resp. (Dkt. # 68-1) at 4 ¶ 2 (authenticating calendar entries); *id.* at 3

5  (the "July 2017 Calendar").)  These reports were apparently "dismissed . . . as baseless."

6  (MSJ Resp. at 36, 39.)

7       Mr. Ewalan's evidence thus conflicts with the evidence offered by Mr. Schreiber

8  and Sgt. Rothwell, who testified that they "do not recall receiving any communication

9  from [Mr.] Ewalan, written or oral, in 2017 related to his relationship with his

10  then-cellmate Leland Harris, or any behavior of his cellmate that would have posed a risk

11  of harm."  (*See* Schreiber Decl. (Dkt. # 61) ¶ 5; Rothwell Decl. (Dkt. # 59) ¶ 5.)  Both

12  men also testified that they "had no authority over offender housing assignments," as

13  proof that "it would have been uncharacteristic and illogical" for Mr. Ewalan to seek their

14  "assistance regarding any interpersonal conflict or desired housing reassignment."  (*Id.*)

15  Sgt. Rothwell further suggests that Mr. Ewalan would have been unlikely to go to him for

16  assistance because his "demeanor toward" Sgt. Rothwell had "always been icy."

17  (Rothwell Decl. ¶ 5.)[7]

18  _____

19       [6] Pages 36-51 of Dkt. # 68 contain Mr. Ewalan's declarations in support of his summary
judgment response.  For ease of reference, the court cites to this material using the CM/ECF page
numbers.

20       [7] Mr. Schreiber and Sgt. Rothwell also testify that they were not working on the dates Mr.
Ewalan alleged he reported the threats to them in his complaint.  (Schreiber Decl. ¶ 5; Rothwell

21  Decl. ¶ 5.)  However, Mr. Ewalan has clarified that the dates in the complaint are inaccurate and
that the meetings took place on the dates identified in his response brief, which he corroborates
with the relevant portion of his personal calendar.  (*See* MSJ Resp. at 9-10; *see also* July 2017

22  Calendar.)  Defendants moved to strike Mr. Ewalan's calendar but have not argued that Mr.

ORDER - 12

1    When the court is confronted by such conflicting direct evidence on summary

2  judgment, it "must assume the truth of the evidence set forth by the nonmoving party

3  with respect to that fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

4  626, 631 (9th Cir. 1987). Thus, the court must assume, for purposes of evaluating

5  Defendants' motion, that Mr. Ewalan reported his concerns about a threat to Mr.

6  Schreiber and Sgt. Rothwell. While Mr. Ewalan's factual presentation would be

7  strengthened by the inclusion of "factual detail describing what he told defendants about

8  [Mr.] Harris's conduct and threats, or what defendants said in response," the court does

9  not find his testimony to be unduly "vague" or "conclusory." (R&R at 17.[8]) Rather, the

10  court finds that Mr. Ewalan's declaration testimony—and the corroboration provided by

11  his personal calendar—provides a direct factual basis from which a reasonable trier of

12  fact could conclude that Defendants knew Mr. Ewalan faced the substantial risk of

13  physical assault by his cellmate and disregarded that risk. *See Farmer*, 511 U.S. at 842

14  ("[K]nowledge of a substantial risk is a question of fact subject to demonstration in the

15  usual ways[.]").

16  _____

17  Ewalan recorded the meetings on the wrong dates or that they were not working on the dates
    shown in the calendar. (*See* Reply at 2-3, 9-10.) The report and recommendation recommends
    denying Defendants' motions to strike. (R&R at 9-10.) The court ADOPTS that

18  recommendation. *See supra* at 4 (adopting recommendations to which no objection was filed).
    [8] Mr. Ewalan offers a few more details about the events leading up to Mr. Harris's threat,

19  as well as about the nature of the threat itself, in his objection. (*See* Obj. at 5-6.) He asserts that
    other inmates spoke to Sgt. Dickerson on his behalf to request that Mr. Ewalan be moved to a

20  different cell for his safety. (*See id.* at 12.) The court does not, however, consider new
    arguments or new evidence raised for the first time through an objection to the report and

21  recommendation. *See Bowman v. Hayes*, No. C16-381 RSM-BAT, 2016 WL 7441013, at *1
    (W.D. Wash. Dec. 27, 2016); *Williams v. Ryan*, No. CV-18-00349-TUC-RM, 2019 WL

22  4750235, at *5 (D. Ariz. Sept. 30, 2019) ("Issues raised for the first time in objections to the
    magistrate judge's recommendation are deemed waived.").

Although the report and recommendation, likewise, "accept[s] plaintiff's evidence that he reported a threat to [D]efendants Schreiber and Rothwell," it nevertheless concludes that because "threats between inmates are common," they should not be taken, "'under all circumstances . . . to impute actual knowledge of a substantial risk of harm' to a prison official." (R&R at 16-17 (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)).) And it recommends finding that Mr. Ewalan's reporting of the threat did not impute actual knowledge here because he has provided no evidence that either "inmate has a prior history of violence." (*Id.* at 17 (first citing *Perkins v. Grimes*, 161 F.3d 1127, 1130 (8th Cir. 1998); and then *McElroy v. Gomez*, No. 120CV00658NONESABPC, 2020 WL 6561214, at *12 (E.D. Cal. Nov. 9, 2020), *report and recommendation adopted*, No. 120CV00658NONESABPC, 2020 WL 7319422 (E.D. Cal. Dec. 11, 2020)).)

Evidence of prior violence by or between two inmates is plainly relevant to a failure to protect claim. *See, e.g.*, *Cortez v. Skol*, 776 F.3d 1046, 1052 (9th Cir. 2015) (finding "evidence suggesting that [the defendant] knew about the hostility between the inmates" was "sufficient . . . for a jury to disbelieve" his asserted lack of awareness of any risks). But the court is not aware of any Ninth Circuit cases holding that such evidence is required. Moreover, requiring such a showing conflicts with the Ninth Circuit's approach in analogous failure to protect cases. For example, in *Clem v. Lomeli*, the plaintiff was threatened by his drunk cellmate, shouted for help from a nearby prison official, and asked to be moved to a safer location. 566 F.3d 1177, 1180 (9th Cir. 2009). The prison official ignored the call for help and told the plaintiff to "[d]eal with it." *Id.* Soon thereafter, the plaintiff was violently beaten by his cellmate. *Id.* Relying only on

1   the fact that the prison official had direct knowledge of the threat—based on the

2   plaintiff's call for help—and "took no steps to abate any risk" to the plaintiff, the Ninth

3   Circuit held that the plaintiff "was therefore entitled to a 'failure to act' instruction." *Id.*

4   at 1182. The prison official's explanation that he thought the plaintiff "was 'tired' of

5   being in his cell and needed to be moved" did not alter the court's conclusion that an

6   instruction on the official's failure to act was appropriate. *See id.* at 1180.

7         Accordingly, the court finds that Mr. Ewalan's testimony that he directly reported

8   Mr. Harris's threat to Mr. Schreiber and Sgt. Rothwell can serve to impute actual

9   knowledge of the threat.

10        Even if Defendants had pre-attack notice from Mr. Ewalan, they might

11   nevertheless "be found free from liability if they responded reasonably to the risk, even if

12   the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Here, Defendants

13   neither argue that they took action to abate the risk, nor that their failure to do so was

14   reasonable. (*See* MSJ at 8 (arguing only that Mr. Ewalan did not, in fact, report Mr.

15   Harris's threat to Defendants); Schreiber Decl. ¶ 5; Rothwell Decl. ¶ 5; *see also* MSJ

16   Resp. at 36, 39 (noting that his reports were dismissed as "baseless").) The absence of

17   such evidence provides further reason to deny summary judgment to Defendants with

18   respect to the July 2017 Incident. *See Farmer*, 511 U.S. at 843 n.8 (explaining that a

19   prison official will be liable where he "declined to confirm inferences of risk that he

20   strongly suspected to exist (as when a prison official is aware of a high probability of

21   facts indicating that one prisoner has planned an attack on another but resists

22   opportunities to obtain final confirmation . . .)").

ORDER - 15

1        Because Mr. Ewalan has provided Defendants with "at least one sworn averment

2  of" "a specific fact essential to [his] case," he has done enough for count I to survive

3  summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

4  Accordingly, the court ADOPTS the recommendation to grant summary judgment to Ms.

5  Nikula, DECLINES TO ADOPT the recommendation to grant summary judgment to the

6  remaining Defendants, GRANTS summary judgment to Ms. Nikula, and DENIES

7  summary judgment on count I for the remaining Defendants.

8       2.    The October 2019 Incident

9        The report and recommendation also recommends summary judgment in

10  Defendants' favor as to count II of Mr. Ewalan's complaint, which alleges that

11  Defendants violated his Eighth Amendment rights by failing to protect him in connection

12  with the October 2019 Incident.  (R&R at 18-19.)  As with its recommendation on count

13  I, the report and recommendation recommends finding that Mr. Ewalan has failed to

14  show that Defendants were subjectively aware of the threats he was facing from his

15  cellmate, Mr. Figueroa.  (*Id.*)  Mr. Ewalan objects to this recommendation and asserts

16  that he has established that Ms. Wakefield and Sgt. Larsen had advance notice of the

17  "impending assault" by Mr. Figueroa because (1) he reported the threat directly to them

18  and (2) "[t]wo witnesses, Mike and Anwar [Jaylani] provided their statements" and

19  explained that "Mr. Ewalan and Figueroa had lot [sic] going on a lot," which was the

20  reason a move to Mr. Jaylani's cell was required.  (Obj. at 14.)  Mr. Ewalan did not

21  provide a declaration from "Mike" or Mr. Jaylani with his summary judgment response

22  //

ORDER - 16

1  (*see generally* MSJ Resp.) and does not include any evidence of these statements with his

2  objection (*see generally* Obj.).

3      The evidence Mr. Ewalan has marshalled in support of count II, however, includes

4  his testimony that, on some unspecified date prior to October 4, 2019, he reported an

5  "impending assault" to Ms. Wakefield, who "dismissed the report as mere words." (MSJ

6  Resp. at 47-48.) Despite this brush off, Mr. Ewalan testifies that Ms. Wakefield

7  nevertheless referred him to Sgt. Larsen to "find a solution to" his desire for

8  "protect[ion]" and "safety." (*Id.* at 48.) Mr. Ewalan next testifies that, on some

9  unspecified date "prior to assault," he "reported impending assault to" Sgt. Larsen. (*Id.* at

10 50-51.)

11     This testimony is contradicted by Ms. Wakefield and Sgt. Larsen, who both testify

12 that Mr. Ewalan never reported any concerns about living with Mr. Figueroa prior to the

13 October 2019 Incident and that they were not otherwise aware of any such concerns.

14 (*See* Wakefield Decl. (Dkt. # 55) ¶ 4, 6; Larsen Decl. (Dkt. # 54) ¶ 8.) The record also

15 contains evidence that Mr. Ewalan requested a transfer into Mr. Figueroa's cell on June

16 3, 2019 because he believed the two would be "compatible" cellmates, and that he

17 requested another transfer to Mr. Jaylani's cell on July 28, 2019, again because he

18 thought it would be a compatible situation. (*See* Larsen Decl. ¶ 6, Ex. A.) Sgt. Larsen

19 denied the July 28, 2019 transfer request because the second bed in Mr. Jaylani's cell was

20 already occupied. (*See id.*)

21     Because Mr. Ewalan is the non-moving party, the court takes as true his testimony

22 that he informed Ms. Wakefield and Sgt. Larsen prior to the October 2019 Incident that

1    he had been threatened by Mr. Figueroa.  And drawing all inferences in Mr. Ewalan's

2    favor, the court cannot say that the evidence of his transfer requests—though they give no

3    indication of a brewing problem between Mr. Figueroa and Mr. Ewalan—dispositively

4    undercuts the evidence that Ms. Wakefield and Sgt. Larsen knew Mr. Ewalan had been

5    threatened.  (*See* MSJ at 9 (describing transfer requests as "silent" on the issue).)

6    Although Defendants might nevertheless "be found free from liability if they responded

7    reasonably to the risk, even if the harm ultimately was not averted," *see Farmer*, 511 U.S.

8    at 844, they have made no argument nor presented evidence to support that theory here.

9    (*See* MSJ at 8-9 (arguing only that Mr. Ewalan did not report any threats.)

10         Because there remains a disputed question of material fact as to whether

11   Defendants had actual awareness of the risk to Mr. Ewalan, summary judgment on count

12   II is improper.  Accordingly, the court DECLINES TO ADOPT the recommendation and

13   DENIES Defendants' motion for summary judgment on count II.

14   **D.    Qualified Immunity**

15         Defendants have further argued that their motion for summary judgment should be

16   granted because each Defendant is shielded from liability by qualified immunity.  (*See*

17   MSJ at 12-13.)  Because the report and recommendation recommends granting summary

18   judgment to Defendants on Mr. Ewalan's failure to protect claims, it did not need to

19   reach this issue.  (R&R at 19; Obj. at 22-24 (objecting to the lack of recommendation

20   denying qualified immunity).)  As set forth above, the court declines to grant summary

21   judgment to Defendants on either of Mr. Ewalan's failure to protect claims it will

22   consider whether summary judgment should be granted to Defendants because they are

1   shielded from liability by qualified immunity.  *See Wilk v. Neven*, 956 F.3d 1143, 1148

2   (9th Cir. 2020).[9]

3        To determine whether qualified immunity will attach, the court must determine

4   "whether the applicable law was 'clearly established' at the time of the incident."  *Id.*

5   (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  "Law is 'clearly established'

6   for the purposes of qualified immunity if 'every reasonable official would have

7   understood that what he is doing violates th[e] right' at issue."  *Id.* (quoting *Taylor v.*

8   *Barkes*, 575 U.S. 822, 825 (2015) (per curiam)).  The Ninth Circuit has "recently and

9   explicitly held that it is clearly established that prison officials must 'take reasonable

10  measures to mitigate the [known] substantial risk[s]' to a prisoner."  *Id.* (quoting *Castro*

11  *v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016)).

12       Where "there is a material dispute about the correctional officers' conduct," the

13  court will "assume those facts in [the plaintiff's] favor in order to determine whether the

14  denial of qualified immunity was appropriate."  *Est. of Ford v. Ramirez-Palmer*, 301 F.3d

15  1043, 1048 (9th Cir. 2002); *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) ("[W]e

16  evaluate [Gomez's] claims of qualified immunity by resolving all factual disputes in

17  Jeffers' favor.").  Doing so here leads the court to assume that Defendants were aware

18  that Mr. Ewalan faced a substantial risk of being attacked by Mr. Harris in 2017 and Mr.

19  Figueroa in 2019, based on Mr. Ewalan's direct reporting of the imminent attacks to the

20  //

21
        [9] Because the court grants summary judgment to Ms. Nikula on count I, the only claim
22  for which she is sued, *see supra* at 11, it need not consider whether she is protected by qualified
    immunity.

1   Defendants.  (*See* MSJ Resp. at 36, 39, 47-48, 50-51.)  Defendants' inaction in the face of

2   that knowledge would amount to deliberate indifference, *see Clem*, 566 F.3d at 1182,

3   which "necessarily precludes a finding of qualified immunity."  *Est. of Ford*, 301 F.3d at

4   1048.  "[P]rison officials who *deliberately* ignore the serious [protection] needs of

5   inmates cannot claim that it was not apparent to a reasonable person that such actions

6   violated the law."  *Id.* (emphasis in original).

7        Accordingly, Defendants' motion for summary judgment on the grounds that they

8   are shielded from liability by a qualified immunity is DENIED.

9                        **IV.    CONCLUSION**

10        For the foregoing reasons, the court ADOPTS IN PART and DECLINES TO

11   ADOPT IN PART the report and recommendation (Dkt. # 82).  The court further

12   GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt.

13   # 53).  Specifically, the court:

14        (1) DENIES Defendants' motion to dismiss Sgt. Dickerson and EXTENDS Mr.

15   Ewalan's time to serve Sgt. Dickerson with a copy of the summons and complaint by

16   forty-five (45) days, starting from the date of this order.  Failure to perfect service of Sgt.

17   Dickerson in that time will result in his dismissal from this action.

18        (2) GRANTS Defendants' motion and DISMISSES Defendants DOC and

19   SCCC with prejudice;

20        (3) GRANTS Defendants' motion and DISMISSES count III of Mr. Ewalan's

21   complaint without prejudice;

22        (4) GRANTS Defendants' motion for summary judgment on count I as to

Ms. Nikula and DENIES Defendants' motion for summary judgment on count I as to Mr.
Schreiber and Sgt. Rothwell.  Ms. Nikula is DISMISSED from this action.

 (5) DENIES Defendants' motion for summary judgment on count II as to Ms.
Wakefield and Sgt. Larsen;

 (6) DENIES Mr. Ewalan's motion for a continuance (Dkt. # 65) and "cross
motion" (Dkt. # 70); and

 (7) CONTINUES Mr. Ewalan's *in forma pauperis* status in the event of an appeal.

Dated this 8th day of December, 2021.

JAMES L. ROBART
United States District Judge