1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

JOSEPH LOCHUCH EWALAN,

CASE NO. C20-5678JLR

11

Plaintiff,

ORDER

v.

12

ROBERT SCHREIBER, et al.,

13

14

Defendants.

15

## I.   INTRODUCTION

16

Before the court are *pro se* Plaintiff Joseph Lochuch Ewalan's motions for (1) a

17

new trial, and (2) leave to conduct discovery.  (New Trial Mot. (Dkt. # 275); Discovery

18

Mot. (Dkt. # 276).)  Defendants Robert Schreiber, Arlee Rothwell, Russell Dickerson,

19

Kendra Wakefield, and Denny Larsen (collectively, "Defendants") oppose the motions.

20

(Resp. (Dkt. # 281).)  The court has reviewed the motions, the parties' submissions in

21

//

22

//

1  support of and in opposition to the motions, the relevant portions of the record, and the

2  governing law.  Being fully advised,[1] the court DENIES Mr. Ewalan's motions.

3  ## II.   BACKGROUND

4  Mr. Ewalan is an incarcerated individual who brought this Section 1983 action

against Defendants, all of whom are or were employees of the Washington State

Department of Corrections.  Mr. Ewalan alleged Defendants violated his Eighth

Amendment right to be free from cruel and unusual punishment by failing to protect him

from two separate assault incidents involving fellow inmates.  Specifically, Mr. Ewalan's

claims against Mr. Schreiber, Mr. Rothwell, and Mr. Dickerson concerned a 2017 assault

incident, whereas his claims against Ms. Wakefield and Mr. Larsen concerned a 2019

assault incident.

After nearly four years of pretrial litigation, this case proceeded to a jury trial on

April 22, 2024.  (*See* 4/22/24 Min. Entry (Dkt. # 257).)  Upon swearing in the jury pool,

the court promptly instructed the potential jurors that the plaintiff, Mr. Ewalan, was

incarcerated and appearing at trial through videoconference technology.  The court

directed the potential jurors not to attach any significance to the fact of Mr. Ewalan's

incarceration.  The court then conducted voir dire, during which one potential juror—

number 18—informed the court that she had prior knowledge about the case.  To avoid

the possibility of revealing prejudicial information to the jury pool, the court invited this

---

[1] Neither party requests oral argument (*see* New Trial Mot. at 1; Discovery Mot. at 1; Resp. at 1), and the court concludes oral argument would not aid in its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

1   potential juror to a private side bar.  The potential juror informed the undersigned that she

2   conducted Internet research about the case and learned the nature of Mr. Ewalan's

3   underlying criminal conviction.  The court later dismissed potential juror 18 for cause,

4   explaining to the parties outside the presence of the jury pool that this potential juror's

5   knowledge of Mr. Ewalan's "murder" conviction[2] tainted her ability to serve.  Mr.

6   Ewalan immediately raised concern about the potential juror's comments, prompting the

7   court to reassure Mr. Ewalan that the potential juror had been dismissed for cause.  The

8   parties then exercised their peremptory challenges and the jury was empaneled and

9   sworn.  The court asked the parties if they accepted the jury as composed.  Mr. Ewalan

10  stated that he thought juror number two had been stricken, and the court clarified that she

11  had not been stricken.  No further objections were made.

12      The parties made opening statements and Mr. Ewalan commenced his

13  case-in-chief.  On the second day of trial, Mr. Ewalan again raised his concerns regarding

14  potential juror 18's comments.  Later that day, after the jury returned to the courtroom,

15  the court asked the jurors whether any of them had researched the case or spoken to

16  potential juror 18 prior to her dismissal.  The jurors answered in the negative.  After the

17  close of Mr. Ewalan's presentation of evidence, the court granted in part Defendants'

---

[2]  To be clear, Mr. Ewalan is not incarcerated on a murder conviction. *See Washington v. Ewalan*, No. 75619-2-I, 2018 WL 2021813, at *1 (Wash. Ct. App. 2018) (unpublished) (affirming conviction for domestic violence assault with a deadly weapon).  Upon review of the rough trial transcripts, the court can confirm that potential juror 18 neither used the term "murder" nor specified the conviction, stating only in general terms her awareness of the nature of the conviction.  The term "murder" came, mistakenly, from the court, and outside the presence of potential jurors.

1    motion under Federal Rule of Civil Procedure 50(a), awarding judgment as a matter of

2    law to Ms. Wakefield and Mr. Larsen based on a total lack of evidence against them.

3    (4/24/24 Min. Entry (Dkt. # 264).)  Trial then proceeded as to the remaining Defendants.

4          During closing argument, Mr. Ewalan directed the jurors' attention to Jury

5    Instruction 3, which stated that "[w]hen a party has the burden of proving any claim or

6    affirmative defense by a preponderance of the evidence, it means you must be persuaded

7    by the evidence that the claim or affirmative defense is more probably true than not true."

8    (Final Jury Instr. (Dkt. # 271) at 4 (quoting Ninth Circuit Model Civil Jury Instr. 1.6).)

9    By that point, the remaining Defendants still intended to assert a qualified immunity

10   affirmative defense.  The court, however, did not specifically instruct the jury on

11   qualified immunity because resolution of this affirmative defense presented a question of

12   law for the court and would have risked confusing the jury.[3]  Nevertheless, Mr. Ewalan

13   proceeded to argue that Defendants bore the burden of persuasion because they were

14   raising an affirmative defense.  To cure this error, the court advised the jury that Mr.

15   Ewalan misrepresented the instructions.  The court directed the jurors' attention to Jury

16   Instruction 1, explaining that Mr. Ewalan's claims under Section 1983 were the only

17   claims in this case, that he alone bore the burden of persuasion on his claims, and there

18   were no affirmative defenses for the jury to consider or resolve.  (*See* Final Jury Instr. at

19   2.)  The jurors then commenced deliberations.  Outside their presence, the court assured

20   defense counsel that Defendants' qualified immunity affirmative defense was still viable

21

22          [3]  The court's decision not to instruct the jury on qualified immunity is explained in
     greater detail, *infra*.

1    and that the court had corrected Mr. Ewalan's misstatement in closing to avoid juror

2    confusion.  The jury ultimately returned a verdict in favor of Mr. Schreiber, Mr.

3    Rothwell, and Mr. Dickerson.  (Verdict (Dkt. ## 268 (sealed), 269 (redacted).)  The court

4    entered judgment against Mr. Ewalan on April 25, 2024.  (Judgment (Dkt. # 272).)

5         On May 3, 2024, Mr. Ewalan filed two notices of appeal, as well as the instant

6    motions for a new trial and for leave to conduct discovery.  (1st NOA (Dkt. # 274); 2d

7    NOA (Dkt. # 277).  *See generally* New Trial Mot.; Discovery Mot.)  The motions are

8    now ripe for decision.

9                              **III.    ANALYSIS**

10        Below, the court addresses a jurisdictional matter before turning to Mr. Ewalan's

11   motions.

12   **A.    Jurisdiction**

13        Although not raised by the parties, the court must address a threshold

14   jurisdictional issue.  "[T]he filing of a notice of appeal generally divests the trial court of

15   jurisdiction."  *In re Silberkraus*, 336 F.3d 864, 869 (9th Cir. 2003).  Where a party files a

16   notice of appeal concurrently with post-trial motions, "the timing of the filings

17   determines their treatment."  *Martin v. Viles*, No. CIV. S-04-756 LKK/JFM P., 2009 WL

18   3365894, at *1 (E.D. Cal. Oct. 16, 2009).  "If the notice of appeal is filed first, the district

19   court is ordinarily divested of jurisdiction to hear motions of these types."  *Id.* (citing

20   *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 654 (9th Cir. 2009)).  "If the notice of

21   appeal is instead filed after a motion for new trial, the notice of appeal is held in abeyance

22   while the district court resolves the motion."  *Id.*; *see also* Fed. R. App. P. 4(a)(4)(B)(i)

1  ("If a party files a notice of appeal after the court announces or enters a judgment—but

2  before it disposes of any motion [for a new trial]—the notice becomes effective . . . when

3  the order dispositing of the . . . motion is entered.").

4        Here, Mr. Ewalan filed two notices of appeal.  The first was docketed

5  approximately two hours before his post-trial motions, which ordinarily would deprive

6  the court of jurisdiction to consider the subsequently-filed motions.  Nevertheless, the

7  Ninth Circuit Court of Appeals appears to have construed the notices of appeal as the

8  later-filed documents.  (*See* 6/12/24 CA9 Order (Dkt. # 285) at 1 (holding case in

9  abeyance pending this court's ruling on the instant motions, pursuant to Federal Rule of

10  Appellate Procedure 4(a)(4)).)  In any event, this court would have reached the same

11  conclusion as the Court of Appeals.  Although Mr. Ewalan is registered for e-filing (*see*

12  Dkt.), it is the court's understanding that Mr. Ewalan does not personally file his

13  documents and instead does so through the assistance of correctional staff.  Thus, the

14  court concludes that the sequence of Mr. Ewalan's filings results from the vagaries of the

15  inmate filing system at the Washington State Penitentiary, and is not attributable to Mr.

16  Ewalan.  Accordingly, and in recognition of Mr. Ewalan's *pro se* status and the interests

17  of judicial economy, the court construes the first notice of appeal as filed subsequent to

18  the instant motions.  *See Martin*, 2009 WL 3365894, at *1 (construing the notice of

19  appeal as the later-filed document in light of the plaintiff's *pro se* status, the fact that he

20  filed his documents by mail, and in the interest of judicial economy); *see also Draper v.*

21  *Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016) (stating that "pro se pleadings must be

22  //

1   construed liberally").  The court will therefore proceed to consider Mr. Ewalan's

2   motions.

3   **B.   Motion for New Trial**

4       Under Federal Rule of Civil Procedure 59(a)(1)(A), the "court may, on motion,

5   grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for

6   any reason for which a new trial has heretofore been granted in an action at law in federal

7   court." Fed. R. Civ. P. 59(a)(1)(A).  "Rule 59 does not specify the grounds on which a

8   motion for new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th

9   Cir. 2007).  Rather, the court is "bound by those grounds that have been historically

10  recognized." *Id.*  "Historically recognized grounds include, but are not limited to, claims

11  'that the verdict is against the weight of the evidence, that the damages are excessive, or

12  that, for other reasons, the trial was not fair to the party moving.'" *Id.* (quoting

13  *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  "A new trial may be

14  ordered to correct manifest errors of law or fact, but the burden of showing harmful error

15  rests on the party seeking the new trial." *Boston Sci. Corp. v. Johnson & Johnson*, 550 F.

16  Supp. 2d 1102, 1110 (N.D. Cal. 2008) (citing *Malhiot v. S. Cal. Retail Clerks Union*, 735

17  F.2d 1133 (9th Cir. 1984)).  "The authority to grant a new trial under Rule 59 'is confided

18  almost entirely to the exercise of discretion on the part of the trial court.'" *Id.* (quoting

19  *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per curiam)).

20  //

21  //

22  //

1          1.  Racial Composition of the Jury

2          Mr. Ewalan first seeks a new trial based on the jury's racial composition, invoking

3   the Sixth Amendment right to an impartial jury drawn from a fair cross section of the

4   community.  (*See* New Trial Mot. at 3 (citing *Duren v. Missouri*, 439 U.S. 357 (1979)

5   (establishing test for evaluating fair cross section claims under the Sixth Amendment)).)[4]

6   As this court has previously observed, however, this is a civil Section 1983 case not

7   subject to the Sixth Amendment, which applies only to criminal prosecutions.  (3/26/24

8   Order (Dkt. # 217) at 5 (rejecting Mr. Ewalan's argument that a hybrid trial would

9   infringe his Sixth Amendment right to confront the witnesses against him)); U.S. Const.

10  amend. VI ("In all *criminal prosecutions*, the accused shall enjoy the right . . . to an

11  impartial jury." (emphasis added)); *see also, e.g.*, *Mettford-Wheat v. Jasper*, No.

12  CV-11-0465-CI, 2012 WL 1931247, at *3 (E.D. Wash. May 29, 2012) (rejecting alleged

13  violations of the Sixth Amendment right to counsel in Section 1983 action because the

14  *pro se* "Plaintiffs [did] not allege the essential fact that they ha[d] been formally charged

15  with a crime").

16  //

17

18          [4]  Mr. Ewalan also cites to the Equal Protection Clause of the Fourteenth Amendment
    (New Trial Mot. at 2), but fails to provide any analysis in support of an Equal Protection
19  violation (*see generally id.*).  In addition, Mr. Ewalan cites *Batson v. Kentucky* for the general
    proposition that "discrimination in the judicial system" contributes to "prejudice" and "impedes
20  fair treatment for racial minorities."  (New Trial Mot. at 5 (citing *Batson v. Kentucky*, 476 U.S.
    79 (1986) (establishing test for evaluating Equal Protection claims on the basis of racially
21  discriminatory peremptory challenges)).)  But Mr. Ewalan makes no argument that Defendants
    exercised their peremptory challenges in an unconstitutional manner.  (*See generally id.*)  The
22  court therefore understands the substance of Mr. Ewalan's argument to concern only an alleged
    fair cross section violation, and the court will limit its analysis accordingly.

1      A civil litigant such as Mr. Ewalan may raise a fair cross section challenge under

2  the Jury Selection and Service Act ("JSSA"), 28 U.S.C. §§ 1861 *et seq.*, the statutory

3  scheme for jury selection in the district courts.  The JSSA declares it "the policy of the

4  United States that all litigants in Federal courts entitled to trial by jury shall have the right

5  to grand and petit juries selected at random from a fair cross section of the community in

6  the district or division wherein the court convenes." 28 U.S.C. § 1861.  But the JSSA

7  imposes strict procedural requirements that civil litigants must follow in pursuit of a

8  challenge to jury selection procedures:

> In civil cases, before the voir dire examination begins, or within seven days
> after the party discovered or could have discovered, by the exercise of
> diligence, the grounds therefor, whichever is earlier, any party may move to
> stay the proceedings on the ground of substantial failure to comply with the
> provisions of this title in selecting the petit jury.

12  28 U.S.C. § 1867(c); *see also Alexander v. Plainer*, 390 F. App'x 724, 725 (9th Cir.

13  2010) (unpublished) ("When a party seeks to challenge the composition of a jury, that

14  party must object 'as soon as possible, preferably before the jury is sworn.'" (quoting

15  *Dias v. Sky Chefs, Inc.*, 948 F.2d 532, 534 (9th Cir. 1991))).  The procedural

16  requirements of 28 U.S.C. § 1867 are mandatory, *United States v. Fernandez*, 497 F.2d

17  730, 733 (9th Cir. 1974), and they "are strictly enforced so that the district court has an

18  opportunity to evaluate the alleged noncompliance [with the JSSA] and to correct it

19  before precious judicial resources are invested in a trial," *United States v. Dean*, 487 F.3d

20  840, 849 (11th Cir. 2007).

21      Here, even if the court were to liberally construe the motion as raising a fair cross

22  section challenge under the JSSA, any such challenge would be procedurally barred

1    because Mr. Ewalan failed to timely raise it.  He did not object on this basis during voir

2    dire or trial, nor did he move to stay the proceedings at any point during trial as required

3    by the JSSA.  28 U.S.C. § 1867.  Mr. Ewalan instead raised his fair cross section

4    challenge for the first time in this post-trial motion after receiving an unfavorable verdict.

5    That delay is fatal.  *See, e.g.*, *Alexander*, 390 F. App'x at 725 (rejecting untimely fair

6    cross section challenge in Section 1983 action); *E.E.O.C. v. Sanchez*, No.

7    CV-10-3033-LRS, 2013 WL 3817315, at *1, *4 (E.D. Wash. July 22, 2013) (denying

8    motion for new trial in civil employment action based on untimely challenge to jury

9    selection procedures).  The court therefore declines to order a new trial based on Mr.

10   Ewalan's tardy challenge to the jury's racial composition.[5]

11        2.  Jury Instructions

12        Next, Mr. Ewalan seeks a new trial based on the court's purported error in

13   instructing the jury that Mr. Ewalan alone bore the burden of proof at trial, even though

14   Defendants intended to assert a qualified immunity affirmative defense.  To illustrate

15   why Mr. Ewalan is incorrect, and why it was necessary to correct his argument in closing

16   that Defendants bore the burden of proof, the court must address the law governing

17   qualified immunity and Eighth Amendment failure to protect claims.

18        "Qualified immunity shields government officials from civil liability unless a

19   plaintiff establishes that:  (1) the official violated a constitutional right; and (2) that right

20

21        [5]  Because the court rejects this argument on procedural grounds, it need not address
     Defendants' responsive arguments on the merits.  (*See generally* Resp.)  For the record, however,
     the court's recollection of the racial composition of the grand and petit juries is consistent with
22   that of defense counsel.  (*See generally* Rachel Decl. (Dkt. # 282).)

1   was 'clearly established' at the time of the challenged conduct, such that 'every

2   reasonable official' would have understood that what he is doing violates that right."

3   *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).  The first inquiry is a question of fact

4   for the jury, whereas the second "clearly established" inquiry is a "question of law that

5   only a judge can decide." *Id.* at 821, 823 (holding district court committed reversible

6   error where the "clearly established" inquiry was presented to the jury).  Generally

7   speaking, "[q]ualified immunity is an affirmative defense that the government [official]

8   has the burden of pleading and proving." *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir.

9   2017).  Nevertheless, the plaintiff bears the burden to prove a constitutional violation, *see*

10  *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013), and "that the right

11  allegedly violated was clearly established at the time of the alleged misconduct," *Romero*

12  *v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991).  "If [the] plaintiff carries this burden,

13  then the officers must prove that their conduct was reasonable even though it might have

14  violated constitutional standards." *Id.*

15         Relevant here, the Eighth Amendment establishes a right to be free from cruel and

16  unusual punishment.  *See* U.S. Const. amend. VIII.  A prison official violates an inmate's

17  Eighth Amendment right "if that official is 'deliberately indifferent'—in other words, if

18  the official is subjectively aware of a substantial risk of serious harm to an inmate and

19  disregards that risk by failing to respond reasonably." *Wilk v. Neven*, 956 F.3d 1143,

20  1147 (9th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 844-45 (1994)); *see*

21  *also Farmer*, 511 U.S. at 833 (recognizing that "prison officials have a duty . . . to protect

22  prisoners from violence at the hands of other prisoners" (citation omitted)).  In this case,

1   Defendants' qualified immunity affirmative defense proceeded to trial because the court

2   found a genuine factual dispute at summary judgment as to whether Defendants were

3   subjectively aware prior to the assault incidents of a substantial risk of serious harm to

4   Mr. Ewalan.  (*See* 12/8/21 Order (Dkt. # 85) at 10-20.)

5          Ninth Circuit case law and the comment to Ninth Circuit Model Civil Instruction

6   9.34 establish a specific procedure to follow where, as here, "a qualified immunity case

7   goes to trial because disputed factual issues remain."  *Morales*, 873 F.3d at 823; *see also*

8   *id.* at 823-24 (explaining that the Ninth Circuit "has not formulated any instructions

9   concerning qualified immunity because most issues of qualified immunity are resolved

10  before trial, or the ultimate question of qualified immunity is reserved for the judge to be

11  decided after trial based on the jury's resolution of disputed facts").  The party asserting

12  qualified immunity must first preserve the issue in a Rule 50(a) motion at the close of

13  evidence.  *See* Ninth Circuit Model Civil Jury Instruction 9.34 cmt. (2017) (citing *Tortu*

14  *v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009)); *see also* Fed. R.

15  Civ. P. 50(a).  The jury must then determine the disputed factual issues regarding whether

16  a constitutional violation occurred.  *See* Ninth Circuit Model Civil Jury Instruction 9.34

17  cmt. (citing *Morales*, 873 F.3d at 824).  "[T]here may be particular cases in which a

18  special verdict on a discrete fact is warranted in order to resolve a qualified immunity

19  claim," and "the decision whether to submit special interrogatories to the jury is a matter

20  committed to the discretion of the district court."  *Id.* (citing *Lam v. City of San Jose*, 869

21  F.3d 1077, 1086 (9th Cir. 2017)).  If the jury finds a constitutional violation, the party

22  asserting qualified immunity may then renew the defense after the verdict in a Rule 50(b)

1    motion, at which point the court must decide the legal question of whether the infringed

2    right was clearly established at the time of the violation. *See id.* (citing *Tortu*, 556 F.3d at

3    1083); *see also* Fed. R. Civ. P. 50(b).

4        Prior to trial in this case, Defendants proposed a final jury instruction on qualified

5    immunity. (Statement (Dkt. # 231) at 64.) Mr. Ewalan objected to the proposed

6    instruction, correctly arguing that it would have improperly submitted the "clearly

7    established" prong of qualified immunity to the jury. (*Id.* at 65.) Ultimately, the court

8    did not instruct the jury on qualified immunity. (*See generally* Final Jury Instr.) The

9    court explained its reasoning to the parties as follows:

10           [T]he court does not intend to issue a final jury instruction concerning
             [Defendants'] qualified immunity affirmative defense. In the court's
11           view, Jury Instruction 10—the Ninth Circuit Model Civil Jury Instruction
             regarding particular rights under the Eighth Amendment—adequately
12           addresses the remaining factual disputes that the jury must decide with
             respect to qualified immunity. To avoid confusing the jury, the court also
13           intends to remove any and all references to qualified immunity from the
             preliminary instructions. (*See* 4/11/24 Order [Dkt. # 246] at App'x A.)
14           Defendants may preserve their qualified immunity defense by bringing a
             motion under Federal Rule of Civil Procedure 50(a) at the close of evidence,
15           and they may renew the defense, if appropriate, by bringing a motion under
             Federal Rule of Civil Procedure 50(b) after the jury returns its verdict.
16
     (4/16/24 Order (Dkt. # 251) at 2.) Mr. Ewalan did not object to this course of action.
17
     (*See generally* Dkt.) "Defendants agree[d] with the [c]ourt's proposal 'to remove any
18
     and all references to qualified immunity from the preliminary instructions,'" but argued
19
     in favor of using special interrogatories "to permit the jury's articulation of facts upon
20
     which Defendants may argue their affirmative defense of qualified immunity."
21
     (Exceptions (Dkt. # 255) at 3-4 (proposing special interrogatories that would require the
22

1    jury to make findings as to each Defendant's subjective awareness of a threat of harm).)

2    In its discretion, the court implemented the following special interrogatory as to Mr.

3    Schreiber, Mr. Rothwell, and Mr. Dickerson (the Defendants who remained following the

4    court's mid-trial partial grant of judgment as a matter of law):  "Do you find by a

5    preponderance of the evidence that, prior to the July 16, 2017 assault incident,

6    [Defendant] personally understood that Mr. Ewalan faced a substantial risk of serious

7    harm in connection with that assault?"  (Verdict at 1-2.)  Mr. Ewalan took exception to

8    the phrasing of the special interrogatory to the extent it did not reflect the exact date on

9    which Mr. Ewalan allegedly notified the Defendants of an imminent threat of harm.  The

10   court overruled the exception, concluding the special verdict form adequately

11   incorporated Mr. Ewalan's theory of the case as written.

12        In sum, the court approached the issue of qualified immunity with the utmost

13   caution, consideration, and in compliance with binding Ninth Circuit precedent.  The

14   court properly declined to instruct the jury on qualified immunity and appropriately

15   exercised its discretion to employ special interrogatories to resolve the disputed factual

16   questions relevant to Defendants' qualified immunity affirmative defense.  *See Morales*,

17   873 F.3d at 824 ("Qualified immunity is a legal issue to be decided by the court, and the

18   jury interrogatories should not even mention the term.  Instead, the jury interrogatories

19   should be restricted to the who-what-when-where-why type of historical fact issues."

20   (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002))).  The court's

21   decision to avoid any reference to the term "qualified immunity" was intentional and

22   calculated to avoid juror confusion.  It was Mr. Ewalan who erred and risked injecting

1    confusion by suggesting in closing argument that Defendants were raising an affirmative

2    defense and therefore bore the burden of proof.  To the contrary, because Defendants

3    properly pled and preserved their qualified immunity defense, Mr. Ewalan then bore the

4    burden to prove the violation of a clearly established right.  *See Mason v. Arizona*, 260 F.

5    Supp. 2d 807, 823-24 (D. Ariz. 2003) (describing this burden-shifting scheme); *A.D.*, 712

6    F.3d at 453 ("[Q]ualified immunity . . . will be applied if the plaintiff has not 'alleged' or

7    'shown' facts that would make out a constitutional violation.").  The court's verbal

8    instruction was necessary to correct Mr. Ewalan's mischaracterization of the written

9    instructions and to accurately convey the burden of proof.

10        Mr. Ewalan fails to demonstrate any instructional error.  Quite the opposite, any

11   error regarding the burden of proof at trial was his own.  Therefore, Mr. Ewalan is not

12   entitled to a new trial on this basis.

13        3.  Rule 50(a) Motion

14        Mr. Ewalan next argues he is entitled to a new trial because the court erred in

15   granting judgment as a matter of law in favor of Ms. Wakefield and Mr. Larsen pursuant

16   to Rule 50(a) after the close of Mr. Ewalan's case-in-chief.  (New Trial Mot. at 7-10); *see*

17   *also* Fed. R. Civ. P. 50(a)(1) (authorizing judgment as a matter of law after a party has

18   been fully heard on an issue but failed to present "a legally sufficient evidentiary basis to

19   find for the party on that issue").  Mr. Ewalan, however, failed to present a scintilla of

20   evidence in support of his claims concerning the 2019 assault incident that allegedly

21   involved Ms. Wakefield and Mr. Larsen.  Indeed, Mr. Ewalan appears to concede that he

22   failed to mention Ms. Wakefield or Mr. Larsen by name a single time throughout his

1   entire presentation of evidence, instead arguing he "named the[m] in the complaint" and

2   should not be punished for his memory impairment, a symptom of his post-traumatic

3   stress disorder.  (New Trial Mot. at 9.)  Mr. Ewalan bore the burden to prove his case and

4   adduced no evidence against these Defendants at trial.  Judgment as a matter of law was

5   properly granted.

6           4.  Underlying Convicion

7           Finally, Mr. Ewalan argues he is entitled to a new trial because the proceedings

8   were "tainted" by references to Mr. Ewalan's underlying criminal conviction.  (*See* New

9   Trial Mot. at 10.)  Mr. Ewalan is incorrect.  At the very beginning of trial, the court

10  explained the nature of the case and specifically instructed the potential jurors not to draw

11  any negative inferences from the fact of Mr. Ewalan's incarceration.  Potential juror 18—

12  the individual who claimed to know the nature of Mr. Ewalan's criminal conviction—

13  was privately questioned, dismissed for cause, and did not serve on the petit jury.  The

14  reference to "murder" occurred outside the presence of any jurors or potential jurors.

15  When the court later polled the petit jury to determine whether any juror had researched

16  the case or spoken with potential juror 18, the jurors all answered in the negative.  The

17  court therefore rejects Mr. Ewalan's request for a new trial based on purportedly

18  "tainted" proceedings.

19  **C.   Motion for Discovery**

20          Mr. Ewalan seeks leave to conduct post-trial discovery in support of his fair cross

21  section challenge.  (*See generally* Discovery Mot.)  Having rejected Mr. Ewalan's fair

22  cross section challenge, the court DENIES his motion for leave to conduct discovery.

*See, e.g.*, *Sanchez*, 2013 WL 3817315, at *4 ("[B]ecause Plaintiffs-Intervenors did not comply with the timeliness requirement of the JSSA, they are foreclosed from making such a challenge . . . and are not entitled to discovery for that purpose.").

### IV.    CONCLUSION

For the foregoing reasons, the court DENIES Mr. Ewalan's motions for a new trial (Dkt. # 275) and for leave to conduct discovery (Dkt. # 276).

Dated this 17th day of June, 2024.

JAMES L. ROBART
United States District Judge